IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUE ANN LULLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:13-cv-495-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

On November 19, 2010, Plaintiff Sue Ann Lulling ("Plaintiff" or "Lulling") applied for disability insurance benefits ("DIB") under Title II of the Social Security Act 42 U.S.C §§ 401 *et seq.* ("the Act") alleging disability as of April 1, 2005. (Tr. 116-122). An Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act. (Tr. 20-28)  The Appeals Council denied Plaintiff's request for review. (Tr. 1).  As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  *Id.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the Court concludes that the decision of the Commissioner should be REVERSED and this case REMANDED to the Commissioner for further proceedings.

**I. NATURE OF THE CASE**

Lulling seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits.  United States District Courts may conduct

limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla ─ i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §

---

1 DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at*

423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

---

http://www.ssa.gov/OP_Home/handbook/handbook.html
2 SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at

---

3 This subpart is also referred to as "the Listing of Impairments" or "the Listings."

1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

### IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

In her application for Disability Insurance Benefits dated November 19, 2012, Plaintiff alleges disability as of April 1, 2005.  (Tr. 116-122).  Her last insured dates was December 31, 2010.  (Tr. 123).  Following the unfavorable initial determination (Tr. 54-59), Ms. Lulling timely filed a request for a hearing before an ALJ on February 24, 2011.  (Tr. 60-61).  A hearing was held on June 4, 2012.  (Tr. 33-52).  Plaintiff received an unfavorable decision on July 27, 2012.  (Tr. 17-32).  The ALJ found that claimant had severe impairments of "degenerative disc disease and facet arthrosis of the lumbar spine, status-post fusion at the L4-S1 vertebral level, Grave's Disease, status-post subtotal thyroidectomy, post-surgical hypothyroidism, scoliosis, depression, and anxiety."  (Tr. 22).  However, he concluded that Plaintiff was not disabled from April 1, 2005, the

---

4 *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

alleged onset date, through December 31, 2010, the date last insured. (Tr. 28). Plaintiff appealed the decision and the Appeals Council denied review on May 30, 2013. (Tr. 1-16). Thus, the hearing decision became the final decision of the Commissioner.

## V. MEDICAL HISTORY

Lulling was hospitalized at Southeast Alabama Medical Center on February 1, 2005 to diffuse a toxic goiter. (Tr. 197). During an office exam on that date, Dr. Stone noted that she suffered from extreme anxiety and stated that he was going to admit her that day for thyroidectomy. (Tr. 202). Plaintiff had a "subtotal thyroidectomy done on 2/2/2005" and was prescribed Xanax for anxiety, Ambien for sleep, and Lortab for pain. (Tr. 198).

On May 2009, Dr. Burkus, a neurosurgeon at Hughston Clinic, saw Lulling for back pain. In 2001, Dr. Burkus performed an L4-S1 fusion on Plaintiff from which she had excellent relief until sometime in mid-2008. (Tr. 222). In 2009 when Lulling saw Dr. Burkus, she complained of back pain and bilateral sciatica pain. (Tr. 222). She reported that her symptoms were affecting her activities of daily living. (Tr. 222). Dr. Burkus diagnosed "degenerative scoliosis with prior L4 to the sacrum instrumented fusion, adjacent segment degeneration with lumbar instability, stenosis of the LS spine with associated lumbar radiculopathy, and a history of graves disease." (Tr. 222). Dr. Burkus ordered a myelogram and CT scan that showed "some degenerative changes of the facet joints at L3-4, with findings suggesting instability"; it also showed that "L4-5 and S1 were solidly fused with no major compression of the neural structures." (Tr. 224).

On July 20, 2009, Lulling returned to Dr. Burkus. (Tr. 221). Her "[p]hysical examination is unchanged." (Tr. 221). Dr. Burkus stated that he "had a lengthy discussion with Ms. Lulling about treatment options. She adamantly does not want to think about any surgery." (Tr. 221). Ms. Lulling presented for physical therapy in August of 2010 and again in September of 2010. (Tr. 230-233). She complained of "increased pain and symptoms in the low back and posterior hip region." (Tr. 230). On exam she had "extensive spasm," generalized tenderness, and limited flexibility. (Tr. 282).

On September 22, 2009, Lulling saw Dr. Asha Voss, her gynecologist, with complaints of "moderate symptoms of insomnia, fatigue, irritability, nervousness, mood swings, memory loss, weight gain, depression, fluid retention, hair loss and dry eyes." (Tr. 243). She also reported minimal symptoms of "breast tenderness, dry skin, arthritis, decreased libido, hard to reach climax, and headaches." (Tr. 243). She was diagnosed with postsurgical hypothyroidism and premenstrual tension syndrome. (Tr. 245). On October 22, 2009, Lulling called Dr. Voss' office with medication concerns. (Tr. 252). She told the nurse that she thought her medication, Idorol, was causing "heart palpations." (Tr. 252). She followed up with Dr. Voss for hormone treatment several times between 2009 and 2011. (Tr. 252-274). Her medication was altered during these visits. (Tr. 252-274).

On August 24, 2010, Lulling saw Dr. Elizabeth Tucker, an internist, for hypothyroidism, hypercholesterolemia, hyperglycemia, slightly elevated blood pressure, and degenerative disc disease. (Tr. 283). Her medications were changed several times.

(Tr. 283-285). Specifically, on October 31, 2008, Plaintiff's Lexapro was replaced with Pristiq. (Tr. 295).

On February 7, 2011, a non-examining, reviewing doctor completed a residual functional capacity questionnaire based on the available evidence and opined that Lulling could perform light exertional work with occasional climbing or use of ramps/stairs, balancing, stooping, kneeling, crouching and crawling. (Tr. 26, 234, 241).

## VI.   HEARING TESTIMONY

Plaintiff was represented by counsel and testified at the hearing before the ALJ in 2012. (Tr. 33). Plaintiff said that she left work as an administrative assistant due to back pain and a thyroid condition. (Tr. 39). She stated that she could not walk for more than 15 minutes at a time (Tr. 40) and could not sit for more than 20 to 30 minutes at a time. (Tr. 41). She said that on an average day her pain was a five to six on a scale of one to ten, with ten being the most severe. (Tr. 41). She also stated that she takes over the counter medication for her back pain because she cannot tolerate stronger medication. (Tr. 41). However, Plaintiff explained that she never has days which are free from back pain and that her husband and son do the housework, cooking and grocery shopping. (Tr. 43). Plaintiff also testifed that she could not tolerate Pristiq for anxiety, (Tr. 42) so she is just taking vitamins for her anxiety and depression. (Tr. 43).

## VII.   ISSUES

Lulling raises three issues for judicial review:

(1) Whether the ALJ failed to properly consider whether Ms. Lulling's impairments meet or equal listing 1.04?

(2) Whether the ALJ's mischaracterization of the record cannot constitute substantial evidence and thus warrants remand?

(3) Whether the new evidence submitted to the appeals council warrants remand?

### VIII. ANALYSIS

The plaintiff raises several issues and arguments related to this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen,* 815 F. 2d 622, 624 (11th Cir. 1987) (citing *Wiggins v. Schwiker,* 679 F. 2d 1387, 1389 (11th Cir. 1982) in that "[n]o presumption of validity attaches to the Secretary's determination of the proper legal standards to be applied in evaluating claims."). However, the Court pretermits discussion of all the plaintiff's specific arguments because the Court concludes that the ALJ erred as a matter of law at step three of the sequential analysis. Ergo, the ALJ's conclusion that the plaintiff is not disabled is not supported by substantial evidence.

Plaintiff argues that the ALJ erred when he failed to consider whether her severe impairments met or equaled Listing 1.04, the listing for spinal disorders. (Tr. 23-24). The ALJ specifically states in his opinion as follows:

> At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

(Tr. 21); *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004) (stating the

ALJ's obligation at step three to consider whether the claimant meets or equals a listing). Indeed, the ALJ recognized this obligation in his opinion, (Tr. 21), but failed to specifically address whether Lulling met the Listing at 1.04. (Tr. 23). The Commissioner argues that the issue was never presented to the ALJ; and therefore, it is not properly before the court now. The court disagrees.

> Listing 1.04 states as follows:
>
>> **1.04 Disorders of the spine**, (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina or the spinal cord. With:
>>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404 subpt. P, App. 1 § 1.04. This court's independent review of the record demonstrates that the record is replete with references to Plaintiff's back pain. First, the court notes that the ALJ found severe impairments of "[d]egenerative disc disease and facet arthrosies of the lumbar spine, status-post fusion at the L4-S1 vertebral level." (Tr. 22). Second, the court notes that Plaintiff's counsel in his opening statement to the ALJ stated that Plaintiff suffered from "degenerative scoliosis, with attendant back pain and sciatica." (Tr. 36) He also stated that she had "very significant problems with her scoliosis, and her back instability." (Tr. 37). He also referred to her fusion surgery on her back in 2000, but stated that "by 2008, 2009, it's been degenerating, and it's now into the adjacent segments of her lumbar over the lumbar instability, as well." (Tr. 37). Also the court notes that Plaintiff testified before the ALJ that she had severe back pain "every

day." (Tr. 40-41). Thus, the court concludes that the issue of whether Lulling meets or equals a listing for spinal disorders was properly presented to the ALJ; and is thus before the court now for consideration.

The claimant has the burden of proving that an impairment meets or equals a listing. *Wilkinson ex rel. Wilkinson v. Bowen,* 847 F. 2d 660, 662 (11th Cir. 1987). In order to meet a listing the plaintiff must

> (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that his condition meets the specific criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. 20 C.F.R. § 416.925(a).

*Id*. The medical evidence before the court demonstrates that Plaintiff's treating doctor and orthopaedic surgeon, Dr. Kenneth Burkus, performed a L4-S1 instrumented fusion in June 2001, from which she received "excellent relief" until sometime in mid-2008. (Tr. 222). Dr. Burkus saw Plaintiff for an office visit on May 8, 2009 for "Back Pain and Bilateral Sciatica Pain. Insidious. For Last Year." At this visit, he diagnosed the following:

> 1. Degenerative Scoliosis with prior L4 to the Sacrum instrumented fusion by Dr. Burkus in June 2001.
> 2. Adjacent segment degeneration with lumbar instability
> 3. **Stenosis** of the LS Spine with associated lumbar radiculopathy.

(Tr. 222) (emphasis added). A lumbar myelogram performed on May 21, 2009 showed "some degenerative changes of the facet joints at L3-4, with findings suggesting **instability**." (Tr. 224) (emphasis added). Also, a follow-up CT scan showed "degenerative changes of the facet joints at L3-4 with minimal evidence of adjacent level

disease." It further showed "no major compression" of the neural structures at L1-2, L3-4, L4-5 and L5-S1. (Tr. 226, 227). Lulling presented for physical therapy in August of 2010 and again in September of 2010. (Tr. 230-233). She complained of "increased pain and symptoms in the low back and posterior hip region." (Tr. 230). On exam she had "extensive spasm," generalized tenderness, and limited flexibility. (Tr. 282).

The ALJ found that "no medical opinion contained" in the record states that Lulling meets or equals any listing, and "the claimant in this case did not prove that any of her conditions meet or medically equal" any listing. (Tr. 23). The ALJ went on to state, "[a]ccordingly, I find that the severity of the claimant's **mental impairments**, considered singly and in combination, did not meet or medically equal the criteria of listing 1.02, 12.04 and 12.06." (Tr. 23) (emphasis added). The ALJ proceeded to discuss only Lulling's mental impairments in conjunction with the listings. (Tr. 23-24). The ALJ never specifically referred to Plaintiff's back pain, or spinal disorders when discussing the listings. Nor did he ever cite to listing 1.04 at Step 3 of the sequential analysis. Later in his opinion the ALJ states that "the diagnostic imaging available in the record does not indicate that claimant experiences instability or stenosis." (Tr. 26). This finding is directly contradicted by the record. (Tr. 222, 224).

The court recognizes that although at Step 3 the Listings must be considered in making a disability determination, "it is not required that the Secretary mechanically recite the evidence leading to her determination." Indeed, in some cases "there may be an implied finding that a claimant does not meet a listing." *Hutchinson v. Bowen*, 787 F. 2d 1461, 1463 (11th Cir. 1986) (Finding it implicit in the ALJ's opinion that plaintiff did not

meet any of the Listing impairments because the ALJ reached the fourth and fifth steps of the analysis).

The court can not make that implicit finding in this case because the medical evidence before the court may be interpreted to support a finding that Lulling meets the 1.04 Listing. Indeed, the court recognizes that the CT report shows "no major neural compression". (Tr. 226). However, this report can be read to show some level of neural compression less than "major" and listing 1.04 by its language does not specify a showing of major neural compression. Moreover, the ALJ fails to discuss this evidence in any manner at Step 3. Furthermore, the diagnostic imaging shows "degenerative changes of the facet joints at L3-4, with findings suggesting **instability**"(Tr. 224), which the ALJ explicitly discounted later in his opinion (Tr. 26) and failed to discuss at all at Step 3. Finally, Dr. Burkus, diagnoses "stenosis" (Tr. 222), which the ALJ again explicitly discounts later in his opinion (Tr. 26) and failed to discuss at all at Step 3. Thus, without specific discussion by the ALJ of the Listing issue in this case, the court is unable to conclude the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence.

For these reasons, the Court concludes that the Commissioner erred as a matter of law, and that this case warrants remand for further proceedings regarding whether Lulling meets or equals the Listing under 1.04. In light of the ALJ's failure to fully and fairly consider the evidence in the record of Lulling's spinal disorders, the Court concludes that the ALJ failed to meet his burden.

## IX. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is not supported by substantial evidence and that this case should be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. A separate order will be entered.

DONE this 18th day of March, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE